IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Charity J. Schenker, | ) | CASE NO. 5:12 CV 1020 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID D. DOWD, JR. |
| v. | ) | |
| | ) | |
| County of Tuscarawas, *et al.* | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

## I. INTRODUCTION

*Pro se* Plaintiff Charity Schenker filed this action under 42 U.S.C. §§ 1983, 1985, and

1986 against Tuscarawas County, Tuscarawas County Jobs and Family Services ("TCJFS"),

Tuscarawas County Juvenile Court Judge Linda A. Kate, TCJFS Visitation Monitor and

Parenting Class Instructor Wendy Smitley, TCJFS Caseworker Jaime Grunder, Guardian Ad

Litem ("GAL") Karen Dummermuth, TCJFB Attorney David Haverfield, TCJFS Risk

Assessment and Complaint Intake Worker Elyssa Wanosik, TCJFS Caseworker Supervisor Toni

Anderson, TCJFS Director Lynn Angelozzi, Pathway Caring for Children Child Therapist Gail

Weisend, Chrysalis Counseling Center Psychologist Anita Exley, and Tuscarawas County

Juvenile Probation Officer Shawnee Dunlap.  In the Complaint, Plaintiff alleges Judge Kate

unfairly awarded permanent custody of her two minor children to TCJFS.  She seeks reversal of

the Juvenile Court's custody order, and an award of monetary damages.

Plaintiff also filed an Application to Proceed *In Forma Pauperis*.  That Application is granted.

## II. BACKGROUND

TCJFS filed a complaint in the Tuscarawas County Juvenile Court on April 12, 2010 alleging Plaintiff's minor children, B.S. and S.S., were neglected and dependent.  At that time, Plaintiff was married to Brock Schenker, the children's biological father.  TCJFS became involved after Plaintiff dismissed a protection order she sought against Brock Schenker for domestic violence.  Plaintiff claims that after her children were removed from her home by TCJFS, she separated from Brock Schenker and filed for another Civil Protection Order.

An adjudicatory hearing on the issue of temporary custody was held in the Tuscarawas County Juvenile Court on June 11, 2010.  Based on the testimony presented at the hearing, the court determined that the children were neglected and dependent and ordered that they remain in the temporary custody of TCJFS. Each parent was granted supervised visits with the children.  A case plan for each parent was adopted.  Plaintiff claims she was questioned about the children's immunizations.  She indicates she told the court she had religious objections to immunizations; however, she was told by the court that immunizations would be ordered.

Plaintiff had her first visit with the children with Ms. Smitley monitoring the visitation. After the visitation, Ms. Smitley suspended Plaintiff's visitations with the children claiming Plaintiff behaved in a disruptive manner inconsistent with the purpose of visitation.  The court reinstated those visitations.  *See In the Matter of B.S. and S.S.*, No. 11 AP 100041, 2012 WL 892886, at *1 (Ohio App. 5 Dist. Mar. 13, 2012).

A disposition hearing was held on June 8, 2010.  Plaintiff states she was escorted to a

public restroom and was ordered to submit to a drug test that was administered by Probation Officer Dunlap.  She was also ordered to undergo a psychiatric evaluation with Dr. Exley.  She did not immediately comply with this order.

Plaintiff continued to participate in supervised visits with the children.  She contends that during a semiannual review, Attorney Haverfield stated that the visits with the children were improving.  The court determined that TCJFS had offered supportive services for each part of the case plan and was making reasonable efforts to reunite the family.  Plaintiff disagrees with the court's assessment, claiming the case plan was biased and unfair.

Plaintiff completed the psychological evaluation with Dr. Exley on February 9, 2011.  She claims Dr. Exley was confused by all of the information about Plaintiff.  In her report, Dr. Exley diagnosed Plaintiff with an adjustment disorder with a histrionic personality disorder as well as narcissistic personality features.  *Id.*  She recommended Plaintiff engage in therapy to assist her in confronting her issues and to develop an ability to be more emotionally available to her children.  She also stated that if Plaintiff did not participate in therapy, she would have concerns about reuniting her with her children.  *Id.*  Plaintiff contends there were large discrepancies throughout the report and Dr. Exley failed to provide an accurate evaluation.  She also claims the report was drafted to benefit TCJFS in its attempt to gain permanent custody of the children.

TCJFS filed a Motion for Permanent Custody of B.S. and S.S. on March 1, 2011.  During the semiannual review conducted on April 4, 2011, Family Case Manager Jaime Grunder and GAL Karen Dummermuth indicated that they went to Plaintiff's house to conduct a home study but were refused entry.  Plaintiff contends she did not deny them admittance and insists they did

-3-

not come to her home.  Plaintiff was also ordered to submit to a random drug test at the hearing.

She tested positive for drug use and TCJFS moved to have her visitations terminated.  That

motion was granted.

Judge Kate conducted a hearing on the Motion for Permanent Custody on August 11,

2011.  Dr. Exley testified at the hearing and presented her psychological evaluation of Plaintiff.

Family Case Manager Grunder also testified and indicated that Plaintiff had not seen the children

since the April 4, 2011 hearing.  She stated that Plaintiff had been evicted from her home in

April 2011 and moved out of state.  She also testified that Plaintiff tested positive for marijuana

at each meeting she had with Plaintiff.  *Id.*  She indicated Plaintiff did not comply with the case

plan.  She stated Plaintiff did not show up for appointments or called to cancel them.  She did not

follow the recommendations of Dr. Exley, did not provide her with proof of employment, and

did not complete a drug and alcohol assessment.  Judge Kate issued her decision on September

25, 2011 terminating Plaintiff's parental rights, privileges and responsibilities and granting

permanent custody of the children to TCJFS.  *Id.* at *2.

Plaintiff appealed that order to the Ohio Fifth District Court of Appeals.  In that appeal,

she asserted that the trial court erred in granting permanent custody to JCTFS by issuing a

decision that was not supported by clear and convincing evidence and was against the manifest

weight of the evidence.  She asserted that the trial court should not have granted the Motion of

TCJFS when an appropriate relative placement was available.  She also asserted her children

were denied due process when they were note appointed counsel.  The Court of Appeals

addressed the merits of each of these assignments of error and affirmed the decision of the

Tuscarawas County Juvenile Court on March 13, 2012.  *Id.*

-4-

Plaintiff then filed the within civil rights action asserting eight claims for relief.  In her first cause of action, she seeks relief under 42 U.S.C. §1983 for denial of procedural and substantive due process, religious rights and equal protection.  In her second cause of action, she again asserts she was denied due process and indicates the Defendants are liable to her for abuse of process.  She asserts two conspiracy claims.  Her third cause of action asserts a claim for civil conspiracy under 42 U.S.C. §1983, and her fourth cause of action asserts a conspiracy claim under 42 U.S.C. §1985.  Plaintiff's fifth cause of action seeks relief under 42 U.S.C. § 1986.  Her sixth, seventh and eighth causes of action assert violations of the Ohio Constitution and Ohio Revised Code provisions.  She seeks reversal of the Juvenile Court's Order awarding permanent custody to TCJFS, and monetary damages.

### III. LAW AND ANALYSIS

### A.  Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or

---

[1]  An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

-5-

fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*  556 U.S. 662, 677 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

**B. Rooker-Feldman**

As an initial matter, this Court does not have jurisdiction to reverse a state court judgment.  United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.*  Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the

state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).  Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis.  First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the Court must be inextricably intertwined with the claim asserted in the state court proceeding. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity National Title Insurance Co.*, 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Catz*, 142 F.3d at 293.  The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. *Coles v. Granville*, 448 F.3d 853, 857-59 (6th Cir. 2006).  Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in Plaintiff's particular case as opposed to a general constitutional challenge to the state law applied  in the state action. *Id.*

In the present action, Plaintiff's claims directly attack the state court's decision to award permanent custody of her children to TCJFS.  All of the allegations in the Complaint concern specific grievances that the law was incorrectly applied to Plaintiff's case, and are clearly

predicated on her belief that the state court was mistaken in rendering its decisions against her. Furthermore, Plaintiff requests as relief that the state court's judgment be reversed. Any review of the constitutional claims asserted in this context would require the Court to review the specific issues addressed in the state court proceedings against him. This Court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. *Feldman*, 460 U.S. at 483-84 n. 16; *Catz*, 142 F.3d at 293.

**C.  *Res Judicata***

To the extent Plaintiff is seeking to litigate the question of permanent custody again in a different court in the hope of achieving a more favorable result, she is barred from doing so. Plaintiff cannot file an action in federal court to relitigate matters that were already decided in state court proceedings. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). To determine the preclusive effect a prior state court judgment would have on the present federal action, the Court must apply the law of preclusion of the state in which the prior judgment was rendered. *Migra v. Warren City School District Board of Educ.*465 U.S. 75, 81 (1984).

Plaintiff received a judgment on the issue of permanent custody from the Ohio courts. A full permanent custody hearing was held on August 11, 2011. The court considered testimony from several witnesses and rendered judgment in favor of TCJFS. Plaintiff appealed that decision to the Ohio Fifth District Court of Appeals. She claimed her children were denied due process, that the decision was not supported by clear and convincing evidence, and was against

-8-

the manifest weight of the evidence.  The court of appeals addressed these claims on the merits and affirmed the decision of the trial court on March 13, 2012.  Plaintiff has now filed the within federal civil rights case claiming the juvenile court judge and various employees of TCJFS denied her due process and conspired against her to deprive her of custody of her children.  This Court must look to Ohio's law on preclusion to determine if these state court judgments bar Plaintiff from proceeding with the claims she asserts in this action.

In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion.  *State ex rel. Davis v. Pub. Emp. Ret. Bd.*, 120 Ohio St. 3d. 386, 392 (2008).  "Claim preclusion prevents subsequent actions, by the same parties or their privies, based on any claim arising out of a transaction that was the subject matter of a previous action." *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995).  Claim preclusion also bars subsequent actions whose claims "could have been litigated in the previous suit." *Id.*  By contrast, issue preclusion, or collateral estoppel, prevents the "relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies," even if the causes of action differ.  *Id.*

Here, both the doctrine of claim preclusion and issue preclusion bar relitigation of the claims Plaintiff asserts in this Complaint.  The parties in this action are the same as the parties in juvenile court action, with the exception of Judge Kate, who presided over the action.  Plaintiff asserted her due process claim on appeal of the juvenile court decision.  She could have asserted the other claims on appeal of that decision, but she did not.  The doctrine of claim preclusion bars her from litigating these claims again in this court.  Moreover, the issue of the permanent custody has already been considered and decided by the juvenile court.  Even if the causes of

-9-

action in this action are new, all of the facts necessary to support those claims were determined by the state courts.  This Court must give full faith and credit to those judgments.  Plaintiff is barred from relitigating those matters in this Court.

**D.  Claims against Government Entities and Individuals in their Official Capacities**

        1.  <u>Tuscarawas County</u>

Even if Plaintiff could proceed with this action, her claims against Tuscarawas County, TCJFS, and all official capacity claims against TCJFS employees and Tuscarawas County employees would be dismissed.  An official capacity claim asserted against a state or local government officer is the equivalent of a claim asserted against the government entity the officer represents. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Consequently, Plaintiff's claims against Tuscarawas County employees Haverfield and Dunlap, TCJFS, and TCJFS employees Smitley, Grunder, Wanosik, Anderson, and Angelozzi in their official capacities are redundant as they are subsumed by her § 1983 claims against Tuscarawas County. *Id.*; *Von Herbert v. City of St. Clair Shores*, No. 02-1063, 2003 WL 1194304, *6 (6th Cir. March 11, 2003).

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or

decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999).  The Complaint contains no suggestion of a custom or policy of Tuscarawas County which resulted in a deprivation of Plaintiff's constitutional rights.  The claims against Tuscarawas County and TCJFS are dismissed.  Plaintiff's claims against Smitley, Grunder, Wanosik, Anderson, Angelozzi, Haverfield and Dunlap in their official capacities are also dismissed.

      2.  <u>Judge Kate in her Official Capacity</u>

Plaintiff also includes a claim against Tuscarawas County Juvenile Court Judge Linda Kate in her official capacity.  Because the Juvenile Court is an arm of the State of Ohio, a suit against Judge Kate in her official capacity is a suit against the state itself. *See Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir.1997); *see also Will*, 491 U.S. at 71.  The Eleventh Amendment is an absolute bar to the imposition of liability upon states or their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).  Plaintiff cannot bring a claim for damages against Judge Kate in her official capacity.

      3.  <u>Judge Kate in her Individual Capacity</u>

Moreover, Plaintiff cannot proceed with a claim against Judge Kate in her individual capacity.  Judicial officers are absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the Defendant is not acting as a judge; or

-11-

(2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

Plaintiff cannot overcome the presumption of immunity under the first criteria.  The determination of whether an action is performed in the Defendant's judicial capacity, depends on the "nature" and "function" of the act, not on the act itself.  *Mireles*, 502 U.S. at 13; *Stump* 435 U.S. at 362.  Looking first to the "nature" of the act, the Court must determine whether it is a function generally performed by a judge.  *Stump*, 435 U.S. at 362.  This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges.  *Mireles*, 502 U.S. at 13.  Second, an examination of the "function" of the act alleged requires the Court to assess whether the Plaintiff dealt with the judge in her judicial capacity.

Upon applying these principles, it is evident on the face of the pleading that Judge Kate was acting in her judicial capacity at all times that the conduct alleged in Plaintiff's Complaint occurred.  The issuance of judicial orders pertaining to custody and visitation, and the determination of credibility of witnesses are all actions normally performed by juvenile court judges.  Furthermore, Plaintiff interacted with Linda Kate only when she was performing her duties as a judge.  Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of <u>all</u> jurisdiction.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. (emphasis added.)  When the immunity of the judge is at issue, the scope of the

-12-

judge's jurisdiction is to be broadly construed.  *Stump*, 435 U.S. at 356-57.  A judge will be not deprived of immunity because the action she took was performed in error, done maliciously, or was  in excess of her authority.  *Id.*  Actions taken in complete absence of all jurisdiction are those  acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides.  *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity.  *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the Complaint which reasonably suggest that Judge Kate acted outside of the subject matter jurisdiction of the Juvenile Court. The Juvenile Court judges have jurisdiction to hear all matters involving temporary and permanent custody, visitation for children adjudged to be abused, neglected or dependent.  OHIO REV. CODE § 2151.353.  Plaintiff contends that Judge Kate issued orders which Plaintiff believes to be contrary to Ohio law.  If these allegations are true, Plaintiff's only remedy is an appeal of the order in question.  She does not have recourse against the judge for damages in a civil rights action.

4. Claims against Private Party Defendants

In addition, Child Therapist Gail Weisend, Psychologist Dr. Anita Exley and GAL Karen Dummermuth appear to be private parties who are not subject to suit under 42 U.S.C. §1983.  To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the Defendant must be a

state or local government official or employee.  Dr. Exley and Attorney Dummermuth were appointed by the court to perform an evaluation.  Ms. Weisend testified at the custody proceedings.  It is not clear if she was appointed by the court or retained by the parties.  None of these Defendants appears to be government employees or officials.

As private parties, these Defendants will only be subject to suit under § 1983 if their actions constitute "state action" may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  The Supreme Court has established four tests for determining whether the challenged conduct may be fairly attributable to the state for purposes of a § 1983 claim. These are: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001).  The actions of Weisend, Exley and Dummermuth do not fit any of these criteria.

The public function test requires that the private entity exercise powers that are traditionally exclusively reserved to the state, such as holding elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978), or exercising the power of eminent domain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). Conducting mental health evaluations, and making recommendations to the court are not powers reserved exclusively to the state.  The public function test therefore cannot be the basis for "state action" for a §1983 claim.

The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state.  *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible

-14-

for those initiatives. *Id*.  Again, Plaintiff alleges only that Weisend, Exley and Dummermuth conducted an investigation and made recommendations to the court.  There is no suggestion that the state exercised such coercive powers that these Defendants' actions cannot be deemed to be their own.

Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *See Jackson*, 419 U.S. at 357-58; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724-25 (1961).  This occurs only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action."  *Lugar*, 457 U.S. at 937.  Private parties are not acting under color of state law merely by acting as complainants or witnesses in state criminal actions. *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975); *see Briscoe v. La Hue*, 460 U.S. 325 (1983); *Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.*, 673 F.2d 771 (5th Cir. 1982); *Blevins v. Ford*, 572 F.2d 1336 (9th Cir. 1978). There is no indication that Weisend, Exley and Dummermuth secured significant assistance from the state in performing their duties.

The entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control." *Brentwood*, 531 U.S. at 296.  The crucial inquiry under the entwinement test is whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id*. at 298.  The

-15-

fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988).  Although these Defendants were appointed by the court to perform a duty, there is no suggestion that the government or the court was excessively intertwined with the management and control of their businesses or operations.

As Weisend, Exley and Dummermuth do not qualify as state actors under any of the four tests set forth by the Supreme court, they cannot be held officially or individually liable for constitutional violations under 42 U.S.C. §1983.  The constitutional claims against them under §1983 are dismissed.

**E. Claims against TCJFS and County Employees in their Individual Capacities**

1. Due Process

To the extent Plaintiff's claims for denial of procedural and substantive due process are not barred by the Rooker-Feldman Doctrine and *res judicata*, she fails to state a claim upon which relief may be granted against the employees of Tuscarawas County and the employees of TCJFS in their individual capacities.  The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the state of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983.  *Id.*

-16-

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest.  It simply requires that the government provide "due process" before making such a decision.  *Howard v. Grinage*,  82 F.3d 1343, 1349 -1353 (6th Cir. 1996).  The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Id*.  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983).  Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing.  *See Id.*  The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power.  *Howard*,  82 F.3d at 1349.  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient.  *Howard*,  82 F.3d at 1350.  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a

vehicle to limit various aspects of potentially oppressive government action.  *Id.*  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscience," as to rise to the level of a constitutional violation. *Howard*,  82 F.3d at 1349.

> a. Procedural Due Process

Parents have a fundamental liberty interest in the custody of their children and state intervention in the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause. *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007).  To establish a denial of procedural due process, Plaintiff must plead and prove either that she was deprived of this liberty interest as a result of an established state procedure that itself violates due process rights; or that the Defendants deprived her of this liberty interest pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation.  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). Plaintiff  is not challenging an established state procedure, statute or local ordinance.  Instead, she is asserting she was deprived of custody of her children due to unauthorized acts of the Defendants.

To state a procedural due process claim based upon alleged unauthorized acts of the Defendants, Plaintiff must also plead and prove that state remedies for redressing the wrong are inadequate.  *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064.  "Notice and an opportunity to

be heard are necessary before parental rights can be terminated." *Smith v. Williams-Ash*, 520

F.3d 596, 599 (6th Cir. 2008); Anh v. Levi, 586 F.2d 625, 632 (6th Cir.1978).  Ohio Revised

Code §§ 2151 *et seq.* sets forth the procedures available to a parent to regain custody of a child

placed into shelter care by JFS.  Plaintiff alleges that an adjudicatory hearing was held in June

2010.  A case plan was adopted.  Regular semiannual reviews were conducted.  Finally, TCJFS

filed a Motion for Permanent Custody.  Prior to the termination of her parental rights, a hearing

was held and she alleges she presented evidence of "TCJFS['s] wrongdoings and failure to make

reasonable efforts to reunite children with her... ."  (ECF No. 1 at ¶55.)   When permanent

custody was awarded to TCJFS, she appealed that decision to the Ohio Fifth District Court of

Appeals.  Although she did not obtain the result she desired, she was not denied procedural due

process.  The constitution does not guarantee that the process will always result in a favorable

resolution.  The only question in this inquiry is whether the process accorded prior to the

deprivation was constitutionally sufficient.  *Howard*,  82 F.3d at 1350.  Plaintiff has not claimed

the state remedy provided was inadequate.

  b.  Substantive Due Process

Plaintiff's substantive due process claim is also subject to dismissal.  Due process claims

of this nature involve official acts which infringe on a fundamental right otherwise not explicitly

protected by the Bill of Rights; or official acts, which although not infringing on a fundamental

right, are so literally "shocking to the conscience," as to rise to the level of a constitutional

violation. *Howard*,  82 F.3d at 1349; *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993).

Substantive due process provides that, regardless of the constitutional sufficiency of the

processes afforded, "government may not deprive individuals of fundamental rights unless the

-19-

action is necessary and animated by a compelling purpose." *Pittman v. Cuyahoga County Dept. of Children and Family Services,* 640 F.3d 716, 728-29 (6th Cir. 2011).

Plaintiff does have a fundamental right to family integrity. *Id.* at 729. The deprivation of that right, however was perpetrated by the juvenile court, not by the other Defendants. While TCJFS case workers, the parties' attorneys, the GAL, and the mental health professionals appointed by the court may all present opinions on the permanent placement of the children, none of these Defendants have the final authority to make this determination. Under Ohio law, the juvenile court decides whether to grant permanent custody to TCJFS, to grant legal custody to a relative, or to return the children to one or both of the parents. *See* OHIO REV.CODE ANN. §§ 2151.353(A)(3), 2151.414(A)(1); *Pittman,* 640 F.3d at 729. The conduct of the Tuscarawas County and TCJFS employees did not violate Plaintiff's substantive due process rights. *Id.*

Plaintiff may also base her substantive due process claim on alleged conduct which "shocks the conscience." A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Parate v. Isibor*, 868 F.2d 821, 833 (6th Cir. 1989). The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*. Although Plaintiff clearly believes the TCJFS employees, the TCJFS attorney, and the Tuscarawas County Probation Officer did not sufficiently try to reunify the family, their behavior described in the Complaint does not rise to the level of a constitutional violation.

2.  <u>Freedom of Religion</u>

Plaintiff further alleges the juvenile court violated her First Amendment rights by ordering that her children be vaccinated.  She claim she objected to the inoculations on religious grounds.  The First Amendment to the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...," and is applicable to the States by virtue of its incorporation by the Fourteenth Amendment.  *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *DeHart v. Horn,* 227 F.3d 47, 50 (3d Cir.2000).  The mere assertion of a religious belief, however, does not automatically trigger First Amendment protections. *DeHart,* 227 F.3d at 51.

It has long been recognized that local authorities may constitutionally mandate vaccinations.  *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) (affirming guilty judgment in prosecution under state compulsory vaccination law, noting that "[r]eal liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own ... regardless of the injury that may be done to others").The right to practice religion freely does not include parental liberty to expose the community or the child to communicable disease.  *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).  Although some states have chosen to provide a religious exemption from compulsory immunization, a state need not do so.  *Sherr v. Northport–East Northport Union Free Sch. Dist.*, 672 F.Supp. 81, 88 (E.D.N.Y.1987) ("[I]t has been settled law for many years that claims of religious freedom must give way [to] the compelling interest of society in fighting ... contagious diseases through mandatory inoculation programs.").  The decision to require Plaintiff's children to be vaccinated while they were in foster care, did not violate Plaintiff's constitutional rights.

-21-

In addition, even if the Court were to find that the vaccinations violated Plaintiff's constitutional rights, there is no indication that the employees of TCJFS or Tuscarawas County performed those actions.  Instead, it appears that these Defendants at best made a recommendation to the Juvenile Court.  The Juvenile Court issued the order to vaccinate the children. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  The Complaint simply contains no facts which reasonably associate the Tuscarawas County and TCJFS employees to Plaintiff's First Amendment claims.

3. Equal Protection

Plaintiff also fails to state a claim against the employees of TCJFS and Tuscarawas County for denial of Equal Protection.  Plaintiff states this claim entirely as a legal conclusion and provides no explanation of the factual basis for this claim.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

-22-

Plaintiff has not asserted that she was treated differently than others in substantially similar situations.  She does not explain the nature or basis for this claim.  Federal Civil Procedure Rule 8 requires the Complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal* 556 U.S. at 677.  Plaintiff does not have to provide detailed factual allegations to support the claim, but she cannot state her claim solely as a legal conclusion.  She has to give the Defendants some idea of the actions they committed which she believes denied her equal protection.  *Bell Atl. Corp.*, 550 U.S. at 555.  She has not stated sufficient claim to meet the basic pleading requirements under Federal Civil Procedure Rule 8.

4. <u>Conspiracy Claim under 42 U.S.C. § 1983</u>

In addition, Plaintiff fails to state a claim for relief against the employees of TCJFS and Tuscarawas County for conspiracy under § 1983. A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985).  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  *Id.*  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  *Id.*  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Id.* at 943-44.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

-23-

Again, Plaintiff failed to plead her conspiracy claims with any specificity.  She merely states that the Defendants conspired against her.  This appears to be a conclusion based on the fact that the Defendants testified in a way that she deemed unfavorable to her and, as a result, the juvenile court awarded permanent custody to TCJFS.  There is no suggestion of a single plan and no facts suggesting acts that were committed in furtherance of the conspiracy.  Plaintiff has not stated sufficient facts to demonstrate the Defendants conspired against her.

**F.  Conspiracy Claims under 42 U.S.C. § 1985**

Plaintiff also includes a conspiracy claim against the Defendants under §1985.  These conspiracy claims are different from those asserted under §1983 in that they must allege a conspiracy to deprive a person of equal protection under the law.  To state a claim under § 1985, a plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003).  Furthermore, the acts that allegedly "deprived the plaintiff of equal protection" must be the result of class-based discrimination.  *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)).

A plaintiff fails to state an adequate claim if his or her allegations are premised upon mere conclusions and opinions. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).  Plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir.1993) (holding that the plaintiff

-24-

failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

Here, Plaintiff failed to properly allege a conspiracy claim pursuant to § 1985 . She included only conclusory allegations that the Defendants acted in concert and did not allege that an agreement between two or more persons existed to discriminate against her based on her membership in a constitutionally protected class, such as race or gender.  Absent these allegations, Plaintiff has not stated a claim under §1985.

## G.  42 U.S.C. § 1986

Because Plaintiff  failed to state a claim under § 1985, her claims for relief under § 1986 must also be dismissed.  Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them.  Without a violation of § 1985, there can be no violation of § 1986.

## H.  State Law Claims

The remainder of Plaintiff's claims are based on violation of Ohio law.  Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing state law matters.  *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.  *Id.*  Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear her state law claims.

**IV.  CONCLUSION**

For all the reasons stated herein, Plaintiff's Application to Proceed *In Forma Pauperis* is granted and this action is dismissed pursuant to 28 U.S.C. § 1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.


September 14, 2012                              s/David D. Dowd, Jr.
Date                                           David D. Dowd, Jr.
                                               U.S. District Judge

---

[2]   28 U.S.C. § 1915(a)(3) provides, in pertinent part:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

-26-